UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

CENTRAL DIVISION

```
* * * * * * * * * * * * * * * * * * * * * * * * * * *
                                                    *
ELAINE L. CHAO, Secretary of Labor,                 *
United States Department of Labor,                  *
                                                    *
                              Plaintiff             *
                                                    *      CIVIL ACTION
              v.                                    *
                                                    *      File No. 4:04 cv 40065-FDS
BRIAN M. ANGER, NDI INTERNATIONAL,                  *
INC. and NORTHEAST DISPLAY, INC.                    *
401(k) SAVINGS AND INVESTMENT PLAN,                 *
                                                    *
                              Defendants            *
* * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I. INTRODUCTION

This matter is before the Court on the application of Elaine L. Chao, Secretary of Labor, United States Department of Labor, (the "Secretary") pursuant to Rule 65(a) and (b) of the Federal Rules of Civil Procedure, for a temporary restraining order and preliminary injunction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., as amended. The Secretary has filed an application seeking the temporary freezing of distributions from the Northeast Display, Inc. 401(k) Savings and Investment Plan (the "Plan") to

1

defendant Brian M. Anger. The Secretary's application is supported by the Declaration of Carol Hamilton, a Supervisor employed by the Employee Benefits Security Administration ("EBSA"), United States Department of Labor. (Ex. 1)

## II. STATEMENT OF THE CASE

The Secretary alleges in her complaint that defendant Brian M. Anger violated the fiduciary provisions of ERISA by: (1) failing to act solely in the interest of the Plan's participants and beneficiaries and in accordance with the Plan's governing documents contrary to ERISA §404(a)(1)(A), (B) and (D), 29 U.S.C. §1104(a)(1)(A), (B) and (D); (2) engaging in a series of prohibited transactions in violation of ERISA §406(a)(1) (D), 29 U.S.C. §1106(a)(1) (D); and by engaging in self-dealing with respect to the Plan's assets in violation of ERISA §406(b)(1) and (2), 29 U.S.C. §1106(b)(1) and (2). (Exhibit 2). These violations arise from defendant Brian M. Anger's failure to cause employee contributions to the Plan, which were withheld from employees' wages, to be remitted to the Plan. These alleged violations resulted in a loss to the Plan of $65,346.86 plus interest.

The Secretary seeks injunctive relief, to include among other things, enjoining Brian M. Anger from violating ERISA, enjoining Brian M. Anger from serving as a fiduciary of any ERISA covered employee benefit plan, ordering defendant Brian M. Anger to correct the prohibited transactions in which he engaged, plus interest, and ordering defendant Brian M. Anger to make good to the Plan any losses, including interest, resulting from fiduciary breaches committed by him or for which he is liable.

The Secretary has applied for a temporary restraining order and a preliminary injunction in order to prevent the distribution of defendant Anger's Plan account until the court makes a

final decision on the merits of the case. As of May 12, 2004, defendant Anger had a gross account balance in the Plan of $ 118,209.68. Because defendant Anger has an outstanding loan balance in his account of $ 46,423.29, Anger's net Plan account balance is $ 71,786.39. On February 13, 2004, Mr. Anger filed a voluntary no asset Chapter 7 case. In re: Brian M. and Jean M. Anger, Chapter 7 Case No. 04-40719 JBR. On March 23, 2004, the Chapter 7 trustee in that proceeding filed a report of No Distribution. Throughout the course of the NDI bankruptcy proceeding and Mr. Anger's personal bankruptcy proceeding, Defendant Anger had indicated his intent to have his plan account distributed to him. During the course of hearings in the NDI bankruptcy proceeding, the Secretary raised objections to the distribution of Mr. Anger's account balance. By Order dated May 6, 2004, the bankruptcy court placed a 60 day freeze on Mr. Anger's Plan account balance.[1] (Exhibit 3) That freeze will expire on July 5, 2004. The relief sought is necessary to preserve the ability of the Court to grant meaningful relief for the benefit of the Plan. As demonstrated in this memorandum, the Secretary meets all the requirements for a temporary restraining order and a preliminary injunction. International Resources Inc. v. New York Life Ins. Co., 950 F.2d 294, 301 (6th Cir. 1991).

### III. STATEMENT OF FACTS

The Northeast Display, Inc. 401(k) Savings and Investment Plan is an employee pension plan which was established with an effective date of January 1, 1994 by NDI International, Inc. ("NDI"), the Plan's sponsor. The Plan provides retirement, death, and disability benefits to employees of NDI. Brian M. Anger is the President, Chief Executive Officer and majority

---

[1] The Bankruptcy Court had previously ordered that the Plan be terminated and that complete distributions be made to participants other than Mr. Anger. The bankruptcy Court further has Ordered, upon agreement of all interested parties, that CAF Pension Actuaries, Inc. serve as the independent trustee

shareholder[2] of NDI and adopted the Plan on behalf of NDI.[3]

At all times relevant to this action, the named Plan Administrator of the Plan was NDI. At all times relevant to this action, Brian M. Anger served as the named trustee of the Plan. As such, both NDI and Brian M. Anger were fiduciaries with respect to the Plan and parties in interest with respect to the Plan within the meaning of ERISA §3, 29 U.S.C. §1002. As fiduciaries to the Plan, NDI and Anger were required to enforce the Plan in accordance with its terms, were charged with the general administration of the Plan and management of its assets, and had all powers necessary to fulfill those duties. The Plan contracted with CAF Pension Actuaries, Inc. to provide administrative services to the Plan and retained Manulife Financial as Plan custodian.

The Plan has been funded through voluntary employee contributions in amounts ranging from one (1) percent to fifteen (15) percent of employee salaries in accordance with each employee participant's election. The voluntary employee contributions were withheld from the wages of participating employees by NDI. Contributions withheld from the employees' wages were to be deposited directly into an account maintained by Manulife Financial.

---

of the Plan.

[2] Upon information and belief at all times relevant to this action, Anger owned approximately ninety-six (96) percent of the stock of NDI.

[3] On or about October 4, 2002, NDI filed for Chapter 11 bankruptcy protection. On or about April 16, 2003, the case was converted to a Chapter 7 proceeding. It is unclear at this moment, what if any money the Plan will receive under NDI's liquidation.

4

Over the period April 1, 2002 through September 30, 2002, NDI withheld a total of $40,572.34 from employees' wages for contribution to the Plan. During the months of April and October 1998, NDI withheld a total of $24,774.52 from employees' wages for contribution to the Plan. Despite the withholdings, NDI never remitted these employee contributions to the Plan during these periods. The total amount of unremitted contributions is $65,346.86. In addition, NDI did not segregate these voluntary employee contributions from NDI's general assets. By failing to segregate the employee contributions, NDI was able to convert the employees' contributions to its own use to pay its creditors.

Defendant Anger, the President, Chief Executive Officer and majority shareholder of NDI and Plan trustee failed to ensure that the $65,346.86 in Plan assets was transmitted to the Plan. Defendant Anger had knowledge of NDI's failure to remit the employee contributions and failed to make reasonable efforts under the circumstances to remedy that fiduciary breach.

## IV. ARGUMENT

### A.   ERISA: An Overview

This action was commenced pursuant to ERISA, a comprehensive remedial statute designed to promote and protect the interests of participants and their beneficiaries in employee benefit plans. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983); Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361-62 (1980). Congress' intent in enacting ERISA was to ensure the equitable character and financial soundness of employee benefit plans "by establishing standards of conduct, responsibility and obligation for fiduciaries" of those plans. ERISA §2(b), 29 U.S.C. 1001(b).

The general fiduciary standards of conduct are codified in §404(a) of the Act, 29 U.S.C.

5

§1104(a). They have been held to be "the highest known to the law." Donovan v. Bierwirth, 680 F.2d 263, 272, n.8 (2d cir), cert denied, 459 U.S. 1069 (1982). Courts should accord these standards a liberal construction so as to safeguard the interest of participants and to preserve the integrity of plan assets. Gillian v. Edwards, 495 F.Supp. 1255, 1261 (D.N.J. 1980); Donovan v. Cunningham, 716 F.2d 1455, 1464 (5th Cir. 1983), cert denied, 467 U.S. 1251 (1984).

In assuming their roles as fiduciaries of an ERISA covered plan, fiduciaries must comport their actions and conduct to the standards enunciated in §404(a) of the Act. Relevant to the present action are: the duty to act solely in the interest of the plan's participants and for the exclusive purpose of providing benefits to them, §404(a)(1)(A) of ERISA, 29 U.S.C. §1104(a)(1)(A), the duty to act prudently, §404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). and the duty to administer the plan in accordance with the documents governing the plan, §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D).

In addition to ERISA's general fiduciary standards, §406 of the Act, 29 U.S.C. §1106, prohibits certain specified transactions "because they inherently compromise the duty of trust that is imposed upon a fiduciary." Beck v. Levering, 947 F.2d 639, 641 (2nd Cir. 1991). In particular, §406(a) of ERISA prohibits fiduciaries from entering into "direct or indirect" transactions with "parties in interest" involving: the lending of money or extension of credit, 29 U.S.C. §1106(a)(1)(B); and the transfer of plan assets to a party in interest, or the use of plan assets by or for the benefit of a party in interest, 29 U.S.C. §1106(a)(1)(D). The term "party in interest" includes any fiduciaries such as NDI and Brian Anger, an employer (NDI) any of whose employees are covered by a plan (C), and employees and officers of plan sponsors (Brian Anger), 29 U.S.C. §1002(14)(A), (C), and (H).

Section 406(b) of ERISA, 29 U.S.C. §1106(b), also flatly prohibits self-dealing:

(b) A fiduciary with respect to a plan shall not---

    (1) deal with the assets of the plan in his own interest or for his own account,

    (2) in his individual or any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries

Under ERISA, a fiduciary may not place himself in a position where he is simultaneously acting on behalf of himself and on behalf of a plan. By forbidding self-dealing, ERISA avoids the obvious danger that a fiduciary will sacrifice the plan's interests for his own personal gain.

The overriding interest and concern in securing the integrity of plan assets and safeguarding the rights of plan participants prompted Congress to authorize the Secretary to bring civil actions for equitable and injunctive relief, and to enforce ERISA's provisions. §502(a)(2) and (5) of ERISA, 29 U.S.C. §1132(a)(2) and (5). As a fiduciary of the Plan, Brian M. Anger is subject to personal liability for his fiduciary breaches. §409(a) of ERISA, 29 U.S.C. §1109(a); Lopresti v. Terwilliger, 126 F.3d 34 (2d Cir. 1997). This Court has broad discretion in determining the appropriate relief for breaches of fiduciary violations including the discretion to grant such "equitable or remedial relief as the court may deem appropriate." §409(a) of ERISA, 29 U.S.C. §1109(a), emphasis added, see Donovan v. Mazzola, 716 F.2d 1226, 1235 (9th Cir. 1983), cert denied 464 U.S. 1040 (1984)(Courts have a duty to fashion the remedy which is most advantageous to plan participants and beneficiaries and which best effectuates the purpose of the trust). In light of the broad language of ERISA, and its broad remedial purposes, this Court has ample authority to grant the relief requested in the Secretary's application and to bar the

7

defendant from obtaining a distribution of plan assets from his account with the Plan. Marshall v. Snyder, 572 F.2d 894, 901 (2nd Cir. 1978); Whitfield v. Tomasso, 682 F.Supp. 1287, 1305 (E.D.N.Y. 1988).

### B. The Violations of ERISA

1. Brian M. Anger violated ERISA by failing to act prudently and in the sole interest of plan participants and failing to comply with plan documents, all in violation of ERISA §404(a)(1), 29 U.S.C. §1104(a)(1)

The Supreme Court noted in Central States Pension Fund v. Central Transport, 472 U.S. 559, 572 (1984), that "[o]ne of the fundamental common law duties of a trustee is to preserve and maintain trust assets." This fundamental duty is incorporated in ERISA's overriding command that fiduciaries act "with complete and undivided loyalty to the beneficiaries." 29 U.S.C. §1104(a)(1)(A); Donovan v. Walton, 609 F.Supp. 1211, 1228 (S.D. Fla. 1985)(citation omitted), aff'd, 794 F.2d 586 (11th Cir. 1986). This rule of loyalty is designed to deter fiduciaries "from all temptation," and the rule "must be enforced with 'uncompromising rigidity.'" NLRB v. Amax Coal Co., 453 U.S. 322, 329-30 (1981)(quoting Meinhard v. Salmon, 249 N.Y. 458, 464 (Cardozo, C.J.)). In the instant case, Anger has depleted the Plan's assets without regard to the Plan's obligations to participants and beneficiaries.

As part of his fiduciary obligation to manage and operate the Plan solely for the benefit of participants and in accordance with the Plan's governing document, Anger had a duty to ensure that the employees' contributions were remitted to the trust in a timely manner.4 As part of this

---

4 Pursuant to the Department of Labor's Plan Asset Regulation, 29 C.F.R. 2510.3-102, the sums withheld from the employees' wages by NDI in the Plan constituted plan assets. Specifically, the regulation provides that the assets of a plan shall include:

(a)...the assets of the plan include amounts that a participant or beneficiary pays to an employer or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest

duty, he was responsible for taking steps to know and assure himself that employee contributions were, in fact, being sent to and received by the Plan's custodial trustee. By failing to take any steps to safeguard the employees' contributions or to ensure that these contributions were actually deposited and credited to the Plan's account, Anger breached his duty to act solely for the benefit of the Plan's participants pursuant to §404(a)(1)(A) and (D), 29 U.S.C. §1104(a)(1)(A) and (D). See, PBGC v. Solmsen, 671 F.Supp at 946 (E.D.N.Y.1987) (fiduciary duty breached by failing to segregate and pay to the fund the withheld employee contributions).

Anger also had a responsibility to inform the participants that their contributions had not been remitted to the Plan so that the participants could stop their voluntary contributions and reduce their future losses. See Solmsen, 671 F.Supp at 946. In the instant case, the employees were never notified and, consequently, continued to allow the deductions from their wages. Thus, Anger violated his fiduciary duties under §404(a)(1)(A) by failing to notify the

---

date on which such contributions can reasonably be segregated from the employer's general assets.
(b) Maximum time period for pension benefit plans. (1) Except as provided in paragraph (b)(S), of this section, with respect to an employee pension benefit plan as defined in section 3(2) of ERISA, in no event shall the date determined pursuant to paragraph (a) of this section occur later than the 15th business day of the month following the month in which the participant contribution amounts are received by the employer in the case of amounts that a participant or beneficiary pays to an employer) or the 15th business day of the month following the month in which such amounts would otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer from a participant's wages).
Pursuant to this regulation, the money withheld by NDI from its employees' wages for contribution to the Plan and retained in the companies' general assets constituted plan assets. See also: U.S. v. Grizzle, 933 F.2d 943 (11th Cir. 1991).

participants.

    2.    <u>Brian M. Anger violated ERISA by engaging in transactions with parties in interest specifically prohibited by ERISA § 406(a), 29 U.S.C. §1106(a)</u>

Section 406(a) of ERISA, 29 U.S.C. §1106(a), prohibits fiduciaries from entering into certain "direct or indirect" transactions with "parties in interest" because of the inherent conflicts of interest presented by these transactions. Despite ERISA's prohibitions, Anger has repeatedly engaged in prohibited transactions with plan sponsor, NDI.

Anger's failure to remit employee withholdings to the Plan in a timely manner constituted a transfer of plan assets to, or use of plan assets by or for the benefit of NDI. Further, since Anger did not ensure that the employees' contributions were segregated from NDI's general assets, these funds were at the disposal of the financially distressed NDI.

Anger's actions caused the Plan to engage in transactions with NDI, a party in interest with respect to the Plan, which transactions Anger knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of NDI, the plan sponsor, of assets of the Plan, in violation of §406(a)(1)(D) of ERISA, 29 U.S.C. §1106(a)(1)(D). See, <u>PBGC v. Solmsen</u>, 671 F.Supp 938, 945 (E.D.N.Y. 1987); <u>Donovan v. Williams</u>, 4 EBC 1244, 1245 (N.D. Ohio 1983).

    3.    <u>Brian M. Anger violated ERISA by engaging in self-dealing prohibited by ERISA section 406(b), 29 U.S.C. 1106(b)</u>

Brian M. Anger has repeatedly violated ERISA by self-dealing with plan assets. Rather than forward employee contributions to the Plan as required by ERISA §403(a), 29 U.S.C. §1103(a), Anger simply retained the money in the corporation's general assets. During the relevant period Anger was the majority shareholder of NDI.

ERISA flatly prohibits such self-dealing. Under ERISA §406(b), 29 U.S.C. §1106(b), a fiduciary may not: deal with the assets of a plan in his own interest or for his own account (ERISA §406(b)(1), 29 U.S.C. §1106(b)(1)); or act on behalf of a party whose interests are adverse to the interests of a plan in a transaction involving the plan (ERISA §406(b)(2), 29 U.S.C. §1106(b)(2)). These prohibitions are absolute. ERISA §406(b), 29 U.S.C. §1106(b), "creates a per se ERISA violation; even in the absence of bad faith, or in the presence of a fair and reasonable transaction, §1106(b) establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting employee benefit plans." Gilliam v. Edwards, 492 F.Supp. 1255, 1263 (D.N.J. 1980).

As a fiduciary, Anger has engaged in self-dealing of precisely the type outlawed by ERISA §406(b), 29 U.S.C. §1106(b). See, Solmsen, 671 F.Supp at 946; Williams, 4 EBC at 1245. Anger is not free to place plan assets, in the instant case employee contributions, in the general account of his own business to use as he sees fit for salaries and expenses (including his own salary). See also Tomasso, 682 F.Supp at 1296, 1302 (union, union officers, and trustees violated ERISA §406(b)(1) and (2) by permitting union to retain for its own account contributions made by employers for union-sponsored welfare plan).

C.  **The Secretary is Entitled to a Preliminary Injunction**

In the First Circuit, the factors to be considered for determining whether to grant a preliminary injunction are: (1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant if the injunction is not granted; (3) a balancing of the equities, that is, an assessment of whether the threatened injury to the plaintiff outweighs the threatened harm to the defendant; and (4) the effect on the public interest of the grant or denial of

the injunction. Rosario-Urdaz v. Rivera-Hernandez, 350 F3d 219, 221 (1st Cir. 2003); DeNovellis v. Shalala., 135 F3d. 58, 62 (1st Cir. 1998); Ross Simons of Warwick, Inc. v. Baccarat, Inc., 102 F3d 12, 15 (1st. Cir. 1996); Narrragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); Langlois v. Abington Housing Authority, 207 F.3d 43, 47 (1st Cir. 2000); Water Keeper Alliance v. United States Department of Defense, 271 F.3d 21, 30 (1st Cir. 2001). The standards for granting a temporary restraining order are the same as those set for granting a preliminary injunction.

The facts as set forth herein and in the attached declaration and exhibits demonstrate a substantial likelihood that the Secretary will prevail on the merits of this action. ERISA prohibits the transactions alleged and provides no exception. Defendant's self-dealing and fiduciary breaches can scarcely be disputed.

With respect to demonstrating the potential for irreparable harm absent the grant of the preliminary injunction, the Secretary states that if a temporary restraining order and preliminary injunction are not granted, the defendant could receive complete distribution of his account balance. If Anger's Plan account is distributed to him, the Court will not be able to afford a set off remedy to the Plan participants. This will likely result in a severely limited remedy for the Plan's participants, given the status of Anger's personal finances. As set forth above, Anger has filed a personal no asset bankruptcy petition in which the Chapter 7 trustee has already returned a Report of No Distribution, indicating that Mr. Anger has no personal assets which may be reached by creditors. Given these facts, participants risk losing that portion of their retirement savings which was taken directly from their wages and not transmitted to the Plan. As the First Circuit has noted, "The Supreme Court has held that a preliminary injunction, designed to freeze

the status quo and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be insolvent at the time of judgment." Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 53 (1st Cir. 1986), *citing* Deckert v. Independence Shares Corp., 311 U.S. 282 (1940); see also Unisys Corp. v. Dataware Products, 848 F.2d 311 (1st Cir. 1988); Fleet National Bank v. Rapid Processing Co., 643 F.Supp 1065 (D. Mass. 1986).

Moreover, Anger will suffer minimal, if any, harm if the status quo is maintained by enjoining his distribution until the Court can make a final determination on the merits. Thus, the threatened harm to the participants outweighs any harm to Anger if preliminary relief is granted.

ERISA is a remedial statute designed to protect "the continued well-being and security of millions of employees and their dependents . . .[and] the national public interest." 29 U.S.C. §1001(a). Failure to grant the preliminary injunction and temporary restraining order will potentially prevent adequate restitution to the Plan and will fail to advance the "national public interest" embodied in ERISA.

The court has the authority to enjoin the Plan and Anger from disposing of plan assets pending further order of the court. As the Tenth Circuit recognized in Anthony v. Texaco, it is the congressional intention of ERISA for courts to fashion whatever equitable remedies are necessary to protect participants, including the freezing of plan assets until judgment. 803 F.2d 593, 597-98 (10 Cir. 1986); Fechter v. HMW Industries, Inc., 879 F.2d 1111(3rd Cir. 1989); Holland v. Frank v. Carlow Irrevocable Trust, 176 F.R.D. 416 (D.D.C. 1997); See also Federal Savings and Loan Insurance Corp. v. Dixon, 835 F.2d 554, 561 (5th Cir. 1987)(holding that district court had authority to freeze assets to secure equitable remedies, such as restitution of assets wrongfully obtained, as sought in the Secretary's complaint);

## V. CONCLUSION

For all of the above reasons, this court should grant the Secretary a Temporary Restraining Order and Preliminary Injunction preventing the distribution of Anger's Plan account until the Court reaches a final decision on the merits.

Date: June 25, 2004

                                                  Respectfully submitted,
Howard M. Radzely
Solicitor of Labor

Frank V. McDermott
Regional Solicitor

Address:
U.S. Department of Labor
Office of the Solicitor
J.F.K. Federal Building, Room E-375
Boston, MA 02203
Telephone: (617) 565-2500
FAX: (617) 565-2142

Maureen L. Canavan
Attorney BBO #550969
Attorneys for Elaine L. Chao
Secretary of Labor,
United States Department of Labor